CREATIVE SIGNS, INC., Respondent,

v.

MISSOURI HIGHWAY & TRANSPORTATION COMMISSION, Appellant.

No. WD 49574.

Missouri Court of Appeals,
Western District.

May 23, 1995.

Marci L. Horton, Melinda Beasley, Mo. Highway & Transp. Com'n, Jefferson City, for appellant.

William Barvick, Jefferson City, for respondent.

Before HANNA, P.J., and SPINDEN and LAURA DENVIR STITH, JJ.

SPINDEN, Judge.

The Missouri Highway and Transportation Commission appeals the circuit court's reversal of its decision that Creative Signs, Inc., must remove two of its billboards adjacent to Interstate 29 in Atchison County. The circuit court concluded that the commission had misapplied the law to Creative Signs' billboards. We agree and affirm the circuit court's judgment.

Creative Signs' predecessor, Brown Sign Company, erected the billboards in March 1988.[1] When the commission issued a permit for the billboards, Creative Signs had authority to construct a building on the billboard site. The commission's inspector assumed that the building would be Creative Signs' headquarters for its sign and awning business. We gather from his testimony that he would not have caused a permit to be issued for the billboards had he been aware that Creative Signs would install only a tiny building typically used for storing materials on the site. Creative Signs' shed had a door, a window, electrical power, and was wired for telephone service. Creative Signs used it to store equipment and materials and occasionally to fabricate awnings.

One of Creative Signs' billboards advertised the Sapp Brothers Truck Stop in Council Bluffs, Iowa. The other advertised a nearby, Rock Port truck stop in which James Brown, Creative Signs' president, had an ownership interest.

The commission issued permits for the signs pursuant to § 226.520(4), RSMo 1986, which permits "[o]utdoor advertising located in unzoned commercial or industrial areas[.]" Section 226.540(4), RSMo 1986, defines such an area:

> That area not zoned by state or local law or ordinance and on which there is located one or more permanent structures used for a commercial business or industrial activity or on which a commercial or industrial activity is actually conducted whether or not a permanent structure is located thereon, together with the area along the highway extending outwardly six hundred feet from and beyond the edge of such activity. All measurements shall be from the outer edges of the regularly used improvements, buildings, parking lots, landscaped, storage or processing areas of the commercial or industrial activity and along and parallel to the edge of the pavement of the highway.

For about a year after Creative Signs erected the billboards, the commission's permit inspector, Reed James, drove by the shed once a month and never saw any activity at the site. The shed was locked, and no one was there. He saw Brown on the property once, but Brown was not involved in any noticeable commercial or industrial activity.

---

1. To avoid confusion, we will refer to the appellant as Creative Signs although this case involved only its predecessor, Brown Sign.

James decided that the shed did not meet the definition of § 226.540(4), and he caused a notice of noncompliance to be issued. At a hearing on whether the commission would renew permits for the billboards, James explained his decision, "This particular business did not qualify, as it never did come to having business hours or regular hours at that location."

A large sign identified the shed as the Brown Sign Company and advertised a number for a telephone at Brown's truck stop. Gravel had been laid in front of the shed to facilitate the parking of a vehicle or two. The shed was not an office, and Creative Signs did not expect—or ever have—customers visit it. Creative Signs rarely used the shed during the winter because its business was primarily seasonal—spring and summer. Creative Signs occasionally used the shed during the warmer months to fabricate awnings.

■ The commission decided that its inspector was correct. It based its decision not to renew the permits for Creative Signs' billboards on what it believed was the firm's transient or temporary use of the shed. The commission drew this requirement from § 226.540(5)(c) which defined "commercial or industrial activity" as not including "[t]ransient or temporary activities."

We disagree. We find no evidence that Creative Signs' activity on the property was either transient or temporary. It certainly was occasional. It did not fabricate awnings every day on the site. As it received orders for awnings, it would fabricate them on the site. Each year its orders increased, and its activity on the site increased.

■ A "transient use" would be an employment which is short-lived or lacking in permanence—a momentary or fleeting use. WEBSTER'S THIRD NEW INTERNATIONAL DIC-

TIONARY 2428 (Unabridged 1971). "Temporary use" has the same connotation: lasting for a limited time only. Id. at 2353.

Although Creative Signs acknowledged that its use of the site to fabricate its awnings was occasional, on an "as-needed" basis, it intended to persist in its use of the site on an unlimited, ongoing basis as its business grew. This belied a notion that its use was transitory or temporary.

■ Even if the shed suggested impermanence, the statute clearly does not restrict its application to sites having a permanent structure. Indeed, the statute makes itself applicable to a site "on which a commercial or industrial activity is actually conducted whether or not a permanent structure is located thereon[.]"

■ The commission, however, looked beyond the statute to its regulation, 7 CSR 10–6.040(3)(B)2, which it described as creating "an additional element." We assume that it intended the regulation to be an additional element to those in § 226.540(4).[2] The regulation says:[3]

Visible and recognizable activities. Activities which are visible to a motorist of normal visual acuity traveling at the maximum speed limit posted on the main traveled way of the adjacent interstate or primary highway but which are not recognizable or obvious as a commercial or industrial establishment or activity to such motorist do not constitute commercial or industrial activities for the purpose of determining an unzoned commercial or industrial area. A motorist of normal visual acuity is any person licensed by the state of Missouri to operate a motor vehicle upon the highways of this state.

The commission argues in this appeal:

Although the building may be visible to a motorist traveling on the interstate, it is

---

2. This court found, in *Osage Outdoor Adver., Inc. v. Mo. Highway and Transp. Comm'n*, 680 S.W.2d 164, 169 (Mo.App.1984), that in § 226.530, RSMo 1979 (unchanged in 1986), the General Assembly granted the commission authority to promulgate the regulation. Creative Signs does not challenge, as a usurpation of authority, the commission's using a regulation to add an element to a statutory requirement;

hence, we do not concern ourselves with that issue.

3. We quote the 1977 version of the regulation. The commission amended the regulation in 1990, 1991, and 1994. We deem the 1977 version to be the pertinent regulation because the commission issued its notice of noncompliance to Creative Signs in 1989.

clear the building is not recognizable or obvious as a commercial or industrial activity. The photographs show a shed used for storage. There is no customer parking, customers do not visit the location, there are no indications of what product is being marketed, there are no signs directing the prospective customers to the shed, nor is there any other advertising commonly used to solicit highway customers to businesses. There is no evidence that [Creative Signs] meets the "visible and recognizable activities" test of the regulations and therefore, the activities are not qualified as commercial or industrial.

The argument focuses on Creative Signs' building and not on Creative Signs' activity. Even at that, it misstates the evidence. Creative Signs clearly marked the location as the site of "Brown Sign Company."

The regulation, however, applies to an "establishment *or* activity." It does not require a building, a sign, a parking lot, or the obvious marketing of anything. Indeed, if it did, it would contradict § 226.540(4). It requires that industrial activity—when it occurs—be visible and obvious to passersby. It does not place any time constraints on the activity. The regulation requires that for Creative Signs to enjoy the exemption, it must engage in industrial activity which a motorist with normal vision can see 660–feet away going at 65 miles an hour on Interstate 29.

Hence, the additional element does not alter the outcome. The regulation is of no consequence to the factors on which the commission relied: James' not seeing any activity and Creative Signs' using the shed constantly for storage and occasionally to fabricate awnings. The record is silent as to whether, during those times when Creative Signs fabricated awnings on the site, motorists who had normal visual acuity traveling by on the interstate at 65 miles an hour would have seen the activity and recognized it as an industrial activity. The commission, therefore, did not have sufficient facts on which to rest its conclusion that the regulation disqualified Creative Signs' billboards.

The circuit court correctly reversed the commission's decision. We affirm the judgment of the circuit court.

All concur.